## POSS *v.* MEADER.

1. BILLS AND NOTES—BONA FIDE HOLDER—EVIDENCE.

In an action on a promissory note, given for a motor truck which proved defective, the plaintiff, who was president of the payee, and who took the notes as payment upon advances that he had made to the corporation, was entitled to a directed verdict, as a holder in due course, upon uncontradicted evidence showing that plaintiff caused them to be sent to his brother-in-law, the secretary of the company, for collection; that the latter acted in plaintiff's behalf and was not acting for the corporation, though plaintiff testified that the said secretary had told him that the notes were at the factory and had mentioned his official connection with the payee.[1]

[1]Whether an officer or employee of corporation is chargeable with its knowledge of infirmities in commercial paper purchased from it is discussed in notes in 48 L. R. A. (N. S.) 65, L. R. A. 1915D, 1099.

2. SAME—NOTICE.

Any notice that may have come to plaintiff of the existence of a contract between the payee and maker of the note was insufficient to charge him with notice of breach of the contract of warranty. And the fact that he was president of the corporation does not affect the application of the rule.

3. SAME—HEARSAY—AGENCY.

It was error to admit in evidence statements claimed to have been made by the corporate secretary to defendant relating to the time when plaintiff purchased the notes, to charge him with notice of alleged defects.

Error to Wayne; Hally, J. Submitted October 15, 1915. (Docket No. 114.) Decided December 21, 1915.

Assumpsit by Frank R. Poss, in justice's court, against Squire M. Meader on certain promissory notes. From a judgment for plaintiff defendant appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Reversed.

*Corliss, Leete & Moody,* for appellant.

*Frank C. Golden,* for appellee.

STONE, J. This suit was brought by the plaintiff as the indorsee and holder, against the defendant, as maker, of seven promissory notes for $50 each, dated August 31, 1912, due in successive months after date, being seven out of twelve promissory notes, given by the defendant to the Poss Motor Company, a Michigan corporation, in part payment of the purchase price of a second-hand automobile truck, manufactured by said company; the total purchase price being $800. The suit originated in justice's court. The plaintiff declared on all the common counts, and especially upon said promissory notes. The notes were alike in form, except as to date of maturity. The first note read as follows:

"$50.00.          DETROIT, MICH., Aug. 31, 1912.
"September 30, 1912, after date, I promise to pay to the order of Poss Motor Company fifty dollars at the First National Bank of Detroit. Value received. Int. 6% per annum.          S. M. MEADER."
Indorsements:

"POSS MOTOR CO.,
"By R. R. McKINLEY, Treas.
"F. R. POSS."

Under the plea of the general issue, the defendant gave notice of "an absolute failure of consideration, in that the car was absolutely useless," and of breach of "express and implied warranty of said car," and that plaintiff, "as assignee or indorsee of said notes, took the same with full knowledge of failure of consideration as aforesaid, and that the said plaintiff is not a holder in due course."

Upon the trial in the circuit court the several notes were produced, and one of plaintiff's attorneys testified to the indorsement of the Poss Motor Company, by R. R. McKinley, Treas., and that the first note came into his hands in behalf of the plaintiff, from the First National Bank of Detroit, as nearly as he could recall it, within a week or so after it became due, and he thought before the second note became due; and that the other notes came to his hands from the same bank, in each case after they became due and were dishonored, under instructions from Mr. Poss to the bank, after the first note was dishonored, to deliver them to him from time to time after they became due. Witness further testified to the amount due. The notes were then received in evidence, and the plaintiff rested.

Thereupon the defendant called as a witness Robert R. McKinley, who testified that he was at the time of the making of the notes the treasurer and secretary of the Poss Motor Company; that the plaintiff was the president of the said company; that the witness was the brother-in-law of the plaintiff; and that the notes sued upon were turned over to Mr. Poss as payment on

a loan that he made to the company, immediately after the notes were given. He further testified on direct examination as follows:

"Q. Did they ever come back into your possession, or the possession of the Poss Motor Company?

"A. It seems to me that Mr. Poss gave me the note, or told me to write to Mr. Meader. At that time I did considerable of Mr. Poss' business, owing to the fact that he was out of the city a good deal. I do not just recall whether I notified Mr. Meader that the note was due, or not. It seems to me I did. They did not come back into the possession of the Poss Motor Company; no, sir.

"Q. Now, your possession, how about that?

"A. He may have given me the note to try to collect. As I recollect, he did. * * He would probably go away once a month for a week or ten days. During those periods that he was away, I transacted a portion of his business for him. That was during all the time that the Poss Motor Company was in existence, and I was acting as the secretary and treasurer. While he was here, he was not there in active management of the Poss Motor Company, he had no office there, his office was in the Penobscot building. He left the Poss Motor Company business to the officers of the company, general manager principally. In so far as his personal, private dealings with the Poss Motor Company were concerned, he left them to me, in some cases, I might say in quite the majority; yes, sir. I do not recall that I called on Mr. Meader about the 5th of November, 1912. I would not say that I did not call on him. I believe I did make one trip over there. I do not remember the date. That was not as a representative of the Poss Motor Company; that was for Mr. Poss. I do not recall whether it was one or two notes that were due then. I presume I requested him to pay them at that time. I do not recollect him asking me where the notes were at that time. I would not say that he did not ask me. I do not recollect stating to him that they were over in the Poss Motor Company's office. I would not state that I did not state that to him."

On cross-examination, he testified:

"*Q.* Mr. McKinley, there isn't any question, is there, that these notes were indorsed and delivered to Mr. Poss, either on the same day they were made, or within a day or two thereafter?

"*A.* No, sir.

"*Q.* For money which he had before advanced, or was then advancing?

"*A.* Money which he had advanced just about that time.

"*Q.* Didn't he advance one note of $2,500 just at the time of this transaction?

"*A.* Just about that time; yes, sir. I think I stated it was within a few days before or about that time. There were some other notes of some other purchaser at the same time, Dixie Laundry Company and others, given to him. * * *

"*Q.* Those notes were indorsed by him after they were assigned to him, and before they were in the First National Bank, for collection, were they not?

"*A.* Yes, sir.

"*Q.* And if you had a note or notes to present, you got them from the First National Bank, didn't you?

"*A.* Yes. * * * I was acting for Mr. Poss at the time when I presented this note, or the notes—if there were two—to Mr. Meader."

On redirect examination, he testified:

"*Q.* When you got notes from Mr. Poss to present to the makers for payment, you did it in that capacity, that you were acting for him as a private friend and relation, did you not?

"*A.* Certainly."

There was no testimony which in any way contradicted or modified this testimony of Mr. McKinley, except the following testimony of the defendant, which was received over the objection and exception of plaintiff, to wit:

"*Q.* Were you ever requested to pay that note, or any other one of these notes, after that? (Referring to a conversation with Mr. Wilson, the sales agent from whom he got the car.)

"*A*. Yes, sir; that was not until November, I think, something from the 10th to the 15th, something along there, I do not know exactly, November, 1912, Mr. McKinley, the secretary and treasurer of the Poss Motor Company, came to see me about them then. He told me at that time that he was secretary and treasurer. That is all I know, I did not know it. At the time he visited my place of business, he introduced himself as such. I did not see the notes there. I asked him where the notes were, and he said—I think he said they were to the Poss factory, at the factory."

The defendant gave testimony at great length relating to the trouble which he had with the car, and tending to show that it was worthless, and that there was a total want of consideration for the notes. This evidence was received against the objection of plaintiff that it was immaterial, and irrelevant, and its admission was excepted to.

At the close of the testimony, the plaintiff requested the court to direct a verdict in his favor, which request was denied.

The court, in its charge to the jury, after reading sections 54, 58, and 59 of the negotiable instruments law (Act No. 265, Pub. Acts 1905), charged as follows:

"Now, gentlemen of the jury, the defendant asks me to charge, and I do charge you, if you find from the evidence that the plaintiff, Frank R. Poss, had no notice of the failure of the consideration for which the notes were given, constructive or actual, you shall find that he was a holder in due course and not subject to the defense of failure of consideration. (In this connection you are charged that it is not necessary that the holder of a negotiable note should have actual notice, but that such notice may be constructive notice; and you are instructed constructive notice may be such notice as would naturally arise from the relation of the holder to the indorser and all the other circumstances governing the transfer of the notes.) (You are further instructed that if you find from the evidence that the

plaintiff, Frank R. Poss, had notice, actual or constructive, of the failure of consideration for which those notes were given, you shall find that he was not a *bona fide* holder in due course, and you shall further find that he holds said notes subject to all defenses that might have been made or may be made, against the Poss Motor Company, payee in those notes.)   (If you shall find that Frank R. Poss was not a *bona fide* holder, that is, a holder in good faith, without notice, and you should further find that there was a failure of the consideration, that is, that the article for which these notes were given did not possess the merit that it was represented by the vendor to possess and that it did not do the work that the defendant purchased it to do, your verdict should be no cause of action.) Now, there is one exception which I desire to put to that last request, which I think you have a right to take into consideration.   You will notice that it says 'If you shall find that Frank R. Poss was not a *bona fide* holder, that is, a holder in good faith without notice, and you should further find that there was a failure of the consideration, that is, that the article for which these notes were given did not possess the merit that it was represented by the vendor to possess and that it did not do the work that the defendant purchased it to do, your verdict should be no cause of action.'   You have no right to reach a verdict for no cause of action under that charge unless you also find that the trial given by the defendant of this article was a reasonable trial, and you have no right to reach that either unless you also find that this article was turned back to the company, and it being turned back to the company was acquiesced in by the company, and that all of these things transpired, you see, to the knowledge of Mr. Poss, and before Mr. Poss became possessor of the notes, because if Mr. Poss in due course became possessor of the notes before any of these things came into existence and had paid value for them before that time, what happened subsequently to that time, even though it did reach the knowledge of Mr. Poss, would not make him a holder in bad faith, or would not constitute him a holder in such a way that he would be charged with these things that transpired after he became possessed of the notes.

"Now, on the part of the plaintiff, it is said to you here that these notes were indorsed over to Mr. Poss one or two days after they were made. Upon the part of the defendant it is said to you here that some time in November Mr. McKinley, in paying a visit to the defendant, asked him at that time, not on behalf of Mr. Poss, but on behalf of the Poss Motor Company, to pay the notes that he had given for this car.   *   *   *

"Now, there is only one thing that I desire to charge you upon, and that is this: Certain testimony has been given here of the relationship which existed between these parties. I do not know of any one feature of the testimony, you see, which is disputed concerning Mr. Poss, Mr. Poss' holdings in this company, his official connection with the company, his blood or affinity relation with the secretary and treasurer of the company. Now, those set of facts, or this set of facts rather, not being disputed, the question arises: Does that present a settled legal situation? I think it does present a settled legal situation. That legal situation is this: That if Mr. Poss did not know of this contract and of the notes which were given in connection with this contract, he is in law bound to know of this contract and of the fact that these notes were given in connection with this contract. Now, even though he did know that, you understand, if immediately after that the notes came to his possession, he would still be a holder in good faith, unless you find that these notes did not come into his possession until some time in November, according to the testimony of Mr. Meader."

The trial resulted in a verdict and judgment for the defendant, and the plaintiff has brought the case here for review. Errors are assigned as follows:

(1) Because the court refused to direct a verdict for plaintiff.

(2) Because of the admission of evidence as to an alleged failure of consideration for the notes sued upon.

(3) Because the court erred in admitting the testimony of defendant as to a conversation between himself and the witness McKinley, above referred to.

(4, 5, 6) Because the court charged the jury in the language embraced in the parentheses.

(8) In permitting the jury to find, in the absence

of any competent evidence, that the notes came into the hands of the plaintiff in November.

(10) In submitting to the jury, as evidence of the time when the notes came into the possession of plaintiff, the testimony of defendant as to the conversation had with the witness McKinley.

1. In our opinion, in the state of the record at the close of the testimony, the plaintiff was entitled to a directed verdict. At the time when by the undisputed evidence the notes were negotiated to the plaintiff, he had no notice of any infirmity in the instruments, or defect in the title of the party negotiating them. In fact, there was no evidence that there was any infirmity in the instruments, or defect in the title of the payee. If plaintiff had notice or knowledge that a contract, as the basis of said notes, existed, that would be no defense unless he also had notice, at the time he bought the notes, that there had been a breach of the contract, of which there was no evidence. *Hakes* v. *Thayer,* 165 Mich. 476-489 (131 N. W. 174). Nor would the fact that plaintiff was the president of the company, the payee of the notes, change the application of the rule.

2. We are of the opinion that the trial court erred in permitting the defendant to testify to the conversation between himself and the witness McKinley, and to the statement of said McKinley which was excepted to, and in submitting such testimony to the jury as substantive evidence of the time when the notes were purchased by the plaintiff.

We think that the errors above pointed out were prejudicial to the rights of the plaintiff, and were probably controlling of the verdict.

The judgment of the circuit court is therefore reversed, and a new trial granted.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.